**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Lamar James Crump,

            Petitioner,

    v.

Kathy Halvorson, Warden
Faribault Correctional Facility,

            Respondent.

Case No. 18-cv-1334 (MJD/ECW)

**REPORT AND RECOMMENDATION**

---

This matter is before the Court on Petitioner Lamar James Crump's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Dkt. No. 1).  The Petition has been referred to this Court pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for the issuance of a report and recommendation.  For the reasons set forth below, the Court recommends that the Petition be denied and that no Certificate of Appealability be issued to Petitioner.

## I.    FACTUAL BACKGROUND

### A.    Crump is Convicted of First-Degree Assault

The State of Minnesota charged Crump with the first-degree assault of 15-month-old R.H.  *See State v. Crump*, No. A15-1690, 2016 WL 6826235, at *2 (Minn. Ct. App. Nov. 21, 2016).  A jury trial was held on the first-degree assault charge.  *Id.*  A jury found Crump guilty, and the district court sentenced Crump to 206 months in prison.  (*Id.*)

1

**B.      Crump Appeals His Conviction**

Crump filed an appeal of his conviction.  (A-575-607.)[1]  Crump acknowledged that "[w]hile the record is clear that Crump consented to defense counsel's concession that great bodily harm occurred, there is nothing in the record that would support a finding that he acquiesced to his counsel conceding that R.H. had been assaulted."  (A-606.)  According to Crump, his defense counsel repeatedly conceded throughout his closing argument that the injuries caused to R.H. were "non-accidental" and that due to the definition of assault provided to the jury, counsel's concession was the same as admitting that R.H. had been assaulted.  (A-597.)  Crump sought a new trial based on this ineffective assistance of counsel claim.  (A-593-94, 606.)

The Minnesota Court of Appeals upheld Crump's conviction.  In this regard, the Minnesota Court of Appeals held as follows:

> Crump argues he is entitled to a new trial because defense counsel conceded Crump's guilt without his consent or acquiescence.  During closing argument, defense counsel repeatedly referred to R.H.'s injuries as "non-accidental."  Crump argues that by doing so, defense counsel conceded the injuries were intentional, and therefore that R.H. was assaulted—an element of the offense.  We disagree for two reasons.
>
> First, we are not persuaded that defense counsel conceded that R.H. was assaulted.  When viewed in context, it appears defense counsel was merely arguing that the state had not met its burden of proof.  Defense counsel argued that "[t]he [s]tate is required to prove each and every element of this offense" but that even after the state presented its case "we still don't know exactly or even close to exactly what happened to [R.H.]."  Defense counsel further argued the jury was "left to guess" what "Crump supposedly did[.]"  When the statements are taken together, it appears defense counsel is arguing

---

[1]      The Addendum ("A") containing the underlying record can be found at Docket No. 15.

that the state did not present sufficient evidence to meet its burden of proving the charged offense beyond a reasonable doubt.

Second, even if defense counsel implicitly conceded that R.H. was assaulted, counsel did not concede an element of the charged offense. The district court instructed the jury that the state had to prove beyond a reasonable doubt that (1) Crump assaulted R.H., (2) Crump inflicted great bodily harm upon R.H., and (3) the assault occurred on June 26, 2014, in Dakota County. Accordingly, the state was required to prove not just that R.H. was assaulted, but that Crump was the person who assaulted him. Even if defense counsel's statements were interpreted to imply that R.H. was assaulted, they do not suggest that Crump was the person who assaulted him. Indeed, defense counsel's statements are consistent with his argument to the jury that it was "equally plausible" that J.W. woke up early and "got upset enough with [R.H.] to inflict these injuries." In sum, when the statements are viewed in the context of the totality of the circumstances, they do not amount to a concession of Crump's guilt.

*Crump*, 2016 WL 6826235, at *2 (footnote omitted).

Crump filed a Petition for Review with the Minnesota Supreme Court, which was denied on February 14, 2017. (A-627-47.)

## C.    Present Petition

Crump argues that he was denied his right to effective assistance of counsel and to have every element of the charges against him be decided by a jury when trial counsel repeatedly admitted an element of the first-degree assault charges to the jury without his consent or acquiescence.[2] (Dkt. No. 1 at 4.) Specifically, Crump claims that his trial counsel admitted two of the elements of the charge against him for first-degree assault

---

[2]    Although Crump makes an ineffective assistance of counsel claim in his Petition, neither party made any argument regarding the prejudice prong of *Strickland v. Washington*, 466 U.S. 668 (1984).

without his consent: (1) that RH's injuries constituted great bodily harm and;[3] and (2) that the injuries to R.H. were not accidentally inflicted. (*Id.*) According to Crump, his trial counsel told the jury at least seven times that the injuries to R.H. were not accidentally inflicted and told the jury once that the injuries constituted great bodily harm. (*Id.*)

**D.    Facts Related to R.H.'s June 26, 2014 Injuries**

R.S. worked the nightshift at her job from 9:00 p.m. to 6:00 a.m. (A-85, 92, 152, 155.) R.S. would take her son, 15-month-old R.H., to her friend, J.W.'s, apartment, in the same apartment building as R.S., around 8:30 p.m. on the evenings she worked. (A-91, 152.) Because J.W. needed to have R.H. picked up by 5:00 a.m. so she could go to work, arrangements were made at times to have R.H. brought back to his mother's apartment, where Crump would take care of R.H. until R.S. returned home from work. (A-92-93, 155.) R.S. and Crump had been dating for approximately four months prior to R.H.'s injuries. (A-90.)

On June 25, 2014, R.S. took R.H. to J.W.'s apartment around 8:30 p.m. and went to work. (A-96, 155.) J.W. arrived at R.S.'s apartment with R.H. a little after 5:00 a.m.

---

[3]     Crump's assertion that he did not consent to allowing his counsel to make statements at trial that the jury could construe as an agreement by him that RH's injuries constituted great bodily harm (Dkt. No. 1 at 4) is contradicted his own statements to the judge at trial where he consented to his counsel's strategy (A-471-72). Indeed, it is also contradicted by his briefing on appeal to the Minnesota Court of Appeals that "the record is clear that Crump consented to defense counsel's concession that great bodily harm occurred" (A-606) and by his memorandum in support of his present Petition (Dkt. No. 16 at 14 ("Where Mr. Crump wished to put the prosecution to its burden on all elements except for great bodily harm. . . .")).

(A-163.)  J.W. testified R.H. was asleep and "perfectly fine" when she left him with Crump, who was on the phone with R.S. when J.W. arrived.  (A-99-100, 163, 170.) According to R.S., Crump told her that R.H.'s eyes rolled back in his head when Crump placed R.H. into a car sometime after R.H. had been left with him.  (A-113.)  Crump carried R.H. to J.W.'s apartment and J.W.'s daughter, M.F., answered the door and instructed Crump to call 911.  (A-184-86.)  At this time R.H. looked "lifeless."  (A-185-86.)

At approximately 6:20 a.m. on June 26, 2015, emergency responders were dispatched to an apartment in South St. Paul following a 911 call regarding a possible cardiac arrest of a 15-month-old child.  (A-65-67, 73-75, 215.)  Upon arriving at the apartment building, paramedics found R.H. laying on the living room floor unresponsive to any stimulus.  (A-65-66, 75-77, 216-17.)

The testifying medical providers, Drs. Richard Patterson, Meysam Kebriaei, and Mark Hudson, all testified regarding the serious and substantial injuries suffered to R.H.'s head, including a subdural hemorrhage (without a skull fracture), the swelling of his brain, and trauma to his abdomen (including R.H's liver), and that these injuries to R.H. were indicative of abusive trauma.  (A-270-72, 291-92, 307-09, 369.)  Medical providers testified that the type of accident that would be expected to cause similar injuries would be where a child is in a motor vehicle accident and flies out and hits the windshield, and that it was very unlikely that the injuries suffered by R.H. were the result of an accident (such as a fall from a chair), especially in light of the additional blunt trauma present in the abdomen and liver.  (A-271, 307-09, 352-54.)

The injuries suffered by R.H. resulted in permanent brain damage.  (A-306-07.)

**E.**     **Jury Instructions**

The following instructions were provided to the jury regarding the first-degree

assault charge prior to the parties' closing arguments:

> The State must convince you by evidence beyond a reasonable doubt that the defendant is guilty of the crime charged.  The defendant has no obligation to prove innocence.  The defendant has the right not to testify.  This right is guaranteed by the federal and state constitutions.  You should not draw any inference from the fact that the defendant has not testified in this case.
>
> Intentionally Defined.  Intentionally means that the actor either has a purpose to do the thing or cause the results specified or believes that the act performed by the actor, if successful, will cause the result.  In addition, the actor must have knowledge of those facts that are necessary to make the actor's conduct criminal and that are set forth after the word intentionally.
>
> Assault Defined.  The statutes of Minnesota provide that whoever does an act with intent to cause fear in another person of immediate bodily harm or death or intentionally inflicts or attempts to inflict bodily harm upon another is guilty of a crime.
>
> Bodily harm means physical pain or injury, illness, or any impairment of a person's physical condition.
>
> Assault in the First Degree.  Assault with Great Bodily Harm Defined.  The statutes of Minnesota provide that whoever assaults another person and inflicts great bodily harm is guilty of a crime.
>
> Assault in the first degree.  Assault with Great Bodily Harm Elements.  The elements of assault in the first degree are, first, the defendant assaulted [R.H.].  An assault is the intentional infliction of bodily harm upon another.
>
> Second, the defendant inflicted great bodily harm upon [R.H.]  Great bodily harm means bodily harm that creates a high probability of death, causes serious permanent disfigurement, or causes a permanent or protracted loss or impairment of the function of any part of the body or other serious bodily harm.

It is not necessary for the State to prove that the defendant intended to inflict great bodily harm, but only that the defendant intended to commit the assault.

Third, that the defendant's act took place on June 26th, 2014, in Dakota County.

If you find that each of these elements has been proven beyond a reasonable doubt, the defendant is guilty.  If you find that any element has not been proven beyond a reasonable doubt, the defendant is not guilty.

(A-502-04.)

## F.    Facts Relating to Statements Made by Crump's Defense Counsel During Closing Arguments

During his closing argument, Crump's defense communicated, in relevant part, the

following to the jury:

You're being asked to figure this out.  But the State, they can't do it so they're putting it in your lap.

The State is required to prove each and every element of this offense.  And we sit here, in your case, and as I stand here today, we still don't know exactly or even close to exactly what happened to RH.  Something.  Something non-accidental.  That's as close as we get.

I've asked you -- or asked you at the beginning to listen carefully and to brace yourself for what you were going to see.  And there's no question that you have seen awful things.  Awful things that should never happen to a 15 month old [sic] or a kid of any age or any person.

But that's not what you're being asked to really decide, because you didn't hear any evidence regarding the extent of his injuries being in dispute.  Does this fit great bodily harm?  Sure.  But that's not the point.  That's never really been the point about why you're here or what this is about.

(A-519.)

[J.W.] set the baby in the play and pack, didn't hand the baby to Mr. Crump, which was not unusual, but also is a way in which certain injuries cannot be or would not be discovered.  We know the injuries were not likely accidental.  That's what we know.  But what is the thing that Mr. Crump supposedly did?

7

You're left to guess. Use your imagination. Understandably, there aren't always definitive explanations for injuries, but you really weren't given any. Didn't fall off the chair. Okay. Well, we've got that figured out. He didn't fall off the chair. Is this consistent with a kicking injury? Punching? Was there some object of some kind used? Nobody even came close to offering some explanation, just not accidental. That's what you're left with. It was It's not accidental. We don't know how. We don't know why. But it's not accidental. So, apparently, it's Mr. Crump's problem.

(A-531-32.)

Everyone -- everyone, even people who now wish they could hurt them with their testimony, says that Mr. Crump was great with [R.H.]. And to the extent they saw it, with [P.] too. So what could this child have done in an hour, when he starts out sleeping, to cause a person to be enraged and somehow cause these injuries? Still don't know that. Still haven't heard any suggestion of it. Still have no explanation as to what would set him off to do that. Especially, when all of the information we have about his character or his interactions with children is he's good with them. And, frankly, if I were going to pick between the two, mom is the one who gets set off. Not accusing mom of anything. I can't stress this enough. Don't for a second think that somehow I'm trying to shift this around or put this on her. I'm trying to show you or -- or point out what the evidence has shown to you, and what the evidence has shown you is there's no reason in the world for Mr. Crump to do this. And you are left with an equally plausible -- to the extent that it's ever been developed -- explanation is that for some reason [J.W.] who woke up early, earlier than she was supposed to, got upset enough with this child to inflict these injuries. And how she might have done it, I don't know that, because no one has bothered to tell me what these injuries were caused by, or even close to what might have caused these. It's just not accidental. That's all we know.

(A-535-36.)

## II.    LEGAL STANDARD

A federal court's review of habeas corpus petitions filed by state prisoners is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Habeas relief under § 2254 is warranted in three circumstances: (1) when a state court decision was contrary to clearly established federal

law, (2) when a state court decision involved an unreasonable application of clearly

established federal law, or (3) when a state court decision "was based on an unreasonable

determination of the facts in light of the evidence presented." 28 U.S.C § 2254(d)(1), (2).

Habeas relief is available to a state prisoner if "he is in custody in violation of the

Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Court's

review is "limited to the record that was before the state court that adjudicated the claim

on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-82 (2011).

A federal district court is not allowed to conduct its own de novo review of a

prisoner's constitutional claims. *See Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004)

("We cannot grant relief under AEDPA by conducting our own independent inquiry into

whether the state court was correct as a *de novo* matter."). The "AEDPA . . . imposes a

highly deferential standard for evaluating state-court rulings, and demands that state-

court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773

(2010) (internal citations and quotation marks omitted). Under § 2254(d), a state court

decision is "contrary to" the Supreme Court's precedent if it "arrives at a conclusion

opposite to that reached by [the Supreme] Court on a question of law," or if it "confronts

facts that are materially indistinguishable from a relevant Supreme Court precedent and

arrives at a result opposite to ours." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see

also Engesser v. Dooley*, 457 F.3d 731, 735-36 (8th Cir. 2006). A state court decision is

an "unreasonable application" of Supreme Court precedent if it "identifies the correct

governing legal principle from [the Supreme] Court's decisions but unreasonably applies

that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. In such

9

situations, the court must "ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. A court may not find a state adjudication to be unreasonable "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Under this standard, courts "must deny a writ—even if [they] disagree with the state court's decision—so long as that decision is reasonable in view of all the circumstances." *May v. Iowa*, 251 F.3d 713, 716 (8th Cir. 2001) (citing *Williams*, 529 U.S. at 409-13). "To the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." *Atley v. Ault*, 191 F.3d 865, 872 (8th Cir. 1999) (citation omitted).

To establish a claim for ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Further, a petitioner generally must also "show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The burden is on the petitioner to show a "reasonable probability that, but for counsel's unprofessional errors, the result would have been different." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citing *Strickland*, 466 U.S. at 693).

10

In addition, when reviewing a state court decision, a federal habeas court "presumes that the state court's factual determinations are correct." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)). This deference applies to factual determinations made by the state trial and appellate courts. *See Sumner v. Mata*, 449 U.S. 539, 547 (1981). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Whitehead v. Dormire*, 340 F.3d 532, 539 (8th Cir. 2003).

## III.    ANALYSIS

### A.    The State Court's Determination of the Facts was Reasonable

Crump argues that because (according to Crump) his defense counsel's closing argument clearly took an element of the first-degree assault charge away from the jury without his consent, the state appellate court made an unreasonable determination of fact and improperly denied Crump the relief he was due under the Sixth Amendment. (Dkt. No. 16 at 15.) This argument is based on defense counsel's statements, during closing argument, that the cause of R.H.'s injuries were "non-accidental." (*Id.*) Crump argues that by making these statements, defense counsel was conceding that R.H. was assaulted. (*Id.* at 14-15.) Respondent countered that defense counsel was simply arguing to the jury that the state's medical experts were unable to point to the specific cause of R.H.'s injuries but could only say they were "non-accidental," which does not amount to a concession that R.H. was assaulted. (Dkt. No. 14 at 5.) As stated previously, the Minnesota Court of Appeals was not persuaded that defense counsel conceded that R.H. was assaulted and found that "[w]hen the [closing argument] statements are taken

11

together, it appears defense counsel is arguing that the state did not present sufficient evidence to meet its burden of proving the charged offense beyond a reasonable doubt." *Crump*, 2016 WL 6826235, at *2.

In reviewing Crump's trial counsel's closing argument in its entire context, the Court finds that it was not unreasonable for the state appellate court to conclude that defense counsel did not waive an element of the first-degree assault charge, and that the comments relating to R.H.'s injuries being non-accidental were not an admission of an assault, let alone of an assault by Crump, but rather an argument relating to the State's failure to provide any definitive evidence as to what happened to R.H. It is important to note that defense counsel specifically told the jury that the "State is required to prove each and every element of this offense." (A-519.) The subsequent statements from trial defense counsel regarding something non-accidental happening to R.H. were reasonably interpreted as an argument that the State had failed to put sufficient evidence forward regarding what happened to R.H., except the doctors' testimony that the injuries were possibly indicative of abuse, necessary for the State to meet its burden of proving the charged offense beyond a reasonable doubt. The fact that the closing argument could have been interpreted differently is not sufficient to warrant Crump habeas relief. *See Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

**B.    Claims Grounded in the Minnesota Court of Appeals' Decision Regarding the Elements of First-Degree Assault Under Minnesota Law Are Not Cognizable in a Habeas Action**

Crump also argues that the Minnesota Court of Appeals erred in its finding that even if the statements that RH's injuries were "non-accidental" were a concession by counsel, the concession was not a concession of an element of the crime for first-degree assault under Minnesota law.  (Dkt. No. 16 at 10.)  The Minnesota Court of Appeals held in the alternative that "even if defense counsel implicitly conceded that R.H. was assaulted, counsel did not concede an element of the charged offense."  *See Crump*, 2016 WL 6826235, at *2.  According to Crump:

> Given the instructions given to the jury and the arguments of the prosecution, the repeated references to RH's injuries being non-accidental is the direct equivalent of saying that RH was assaulted.  Assault was defined as "an act with the intent to cause fear in another person of bodily harm, or intentionally inflicts or attempts to inflict bodily harm."  (T. 500-01, quoting CRIM JIG 13.01) (emphasis added).  If RH's injuries were not caused accidentally, then they had to be caused intentionally.
>
> There are two (2) things that Mr. Crump could contest related to the first element of the assault charge, that RH was assaulted, and that he did it. By telling the jury that RH's injuries were non-accidental, Mr. Crump's counsel took that the question of whether RH was assaulted from the jury, leaving for the jury only the question of whether or not it was Mr. Crump who caused RH's non-accidental injuries.  It is appropriate for a defendant to be granted relief under these circumstances where an element of the crime is admitted by counsel.

(Dkt. No. 16 at 13.)[4]

---

[4]    Crump does not dispute that the alleged concession by his trial counsel was as to only one of the "two things" related to the first element of the assault charge (intentionality), not both "things" (intentionality and that Crump committed the act).

This Court lacks authority to review the Minnesota state courts' interpretation and application of state law, for "federal habeas corpus relief does not lie for errors of state law . . . [and] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Brende v. Young*, 907 F.3d 1080, 1084 (8th Cir. 2018) (citing *Estelle*). The Court's review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. Whether conceding assault concedes an element of the first-degree assault is a question of Minnesota law. As such, even if trial counsel conceded that R.H.'s injuries were non-accidental, Crump's claim is not cognizable in this action for federal habeas corpus relief because it is grounded in state law. "In addition, it is not enough for [petitioner] to argue the Minnesota state courts misapplied state law. To obtain habeas relief, [petitioner] must be able to point to the Supreme Court precedent he thinks the Minnesota state courts acted contrary to or applied unreasonably. *See Evenstad v. Carlson*, 470 F.3d 777, 782-83 (8th Cir. 2006). Crump has not done so in the present case.

## C.    The State Court's Decision Was Not Contrary to Clearly Established Federal Law or an Unreasonable Application of Clearly Established Federal Law

The Court notes that while it is not entirely clear, it appears that Crump may be seeking habeas relief under § 2254(d)(1) on the ground that his trial counsel's statements that R.H.'s injuries were non-accidental violated Crump's Sixth Amendment right to have a jury decide his guilt. (*See* Dkt. No. 16 at 8-9, *see also id.* at 10 ("The conclusions of the Minnesota Court of Appeals were the result of an unreasonable determination of

14

fact and an unreasonable application of clearly established federal law.").)  Even if the Court assumes that counsel waived an element of the first-degree assault charge, the Court finds that the state court's decision was not contrary to clearly established federal law or an unreasonable application of clearly established federal law.  In his brief, Crump cites to *Neder v United States*, 527 U.S. 1, 7 (1999), and *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018),[5] for the proposition that when counsel admits a defendant's guilt, that error is a structural error subject to reversal.  (Dkt. No. 16 at 9.)  However, in *Neder*, the Supreme Court held that an omission of an element from the judge's charge to the jury is subject to the harmless error analysis as opposed to a structural error determination.  527 U.S. at 7.  Thus, *Neder* is inapplicable to the present case involving an alleged waiver of an element of the crime by counsel, and does not clearly establish a constitutional right that was violated by Crump's counsel's statements during closing argument.

In *McCoy*, the Supreme Court held that "a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty."  138 S. Ct. at 1505.  However, in *McCoy*, the defendant, while on the record, "vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt."  *Id.* at 1505.  The Court in *McCoy* went on to find that because:

---

[5]    Although both parties cited *McCoy* in their briefing, neither provided any argument as to whether *McCoy* should apply to Crump's claims.  Nevertheless, in view of the fact that Crump appears to making an argument under § 2254(d)(1), the Court addresses *McCoy* in this Report and Recommendation.

> [A] client's autonomy, not counsel's competence, is in issue, we do not apply our ineffective-assistance-of-counsel jurisprudence, to McCoy's claim. Here, however, the violation of McCoy's protected autonomy right was complete when the court allowed counsel to usurp control of an issue within McCoy's sole prerogative. Violation of a defendant's Sixth Amendment-secured autonomy ranks as error of the kind our decisions have called "structural"; when present, such an error is not subject to harmless-error review.

*Id.* at 1510-11 (internal citations omitted). This is in contrast to *Florida v. Nixon*, 543 U.S. 175, 178-93 (2004), which applied the *Strickland* standard to "defense counsel's strategic decision to concede, at the guilt phase of [a capital] trial, the defendant's commission of murder, and to concentrate the defense on establishing, at the penalty phase, cause for sparing the defendant's life." It is important to note that the Supreme Court in *McCoy* clarified that its *Nixon* decision "is not to the contrary" of its holding in *McCoy* because:

> Nixon's attorney did not negate Nixon's autonomy by overriding Nixon's desired defense objective, for Nixon never asserted any such objective. Nixon "was generally unresponsive" during discussions of trial strategy, and "never verbally approved or protested" counsel's proposed approach. Nixon complained about the admission of his guilt only after trial. McCoy, in contrast, opposed [his lawyer's] assertion of his guilt at every opportunity, before and during trial, both in conference with his lawyer and in open court.

*Id.* at 1509 (citations omitted). Thus, under *McCoy*, if defense counsel is "[p]resented with express statements of the client's will to maintain innocence, . . . counsel may not steer the ship the other way." *Id.*; *see also id.* at 1510 ("[C]ounsel may not admit her client's guilt of a charged crime over the client's intransigent objection to that admission."). In other words, *McCoy* is not implicated in situations where the defendant never expressed a desire to maintain his innocence during trial. *Id.* at 1509-10. Further,

Crump has cited no case suggesting *McCoy* may be implicated where counsel for a defendant in a non-capital case concedes an element of a crime, much less part of an element of a crime.

In any event, *McCoy*'s holding regarding structural error is inapplicable to the present case for a number of reasons. First, under the AEDPA, a court sitting in federal habeas may consider only law that was clearly established when the state court conviction became final. *See Carey v. Musladin*, 549 U.S. 70, 74 (2006) ("'[C]learly established Federal law' in § 2254(d)(1) 'refers to the holdings . . . of this Court's decisions as of the time of the relevant state-court decision.'") (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *see also Greene v. Fisher*, 565 U.S. 34, 38 (2011) ("As we explained, § 2254(d)(1) requires federal courts to focus on what a state court knew and did, and to measure state-court decisions against this Court's precedents as of the time the state court renders its decision.") (cleaned up). *McCoy* was decided in 2018, well after Crump's state court conviction became final.

Moreover, *McCoy* is inapplicable because the factual predicate of a *McCoy* structural claim, as set forth above, is absent. Crump provided no evidence (nor can the Court find any) that he ever voiced any opposition to his trial counsel's strategic decision in his non-capital case. Therefore, any failure by the state court to find a structural error entitling Crump to a new trial is not contrary to or an unreasonable application of federal law.

### IV.    REQUEST FOR DISCOVERY AND TO EXPAND THE RECORD

Crump, as part of his Petition, has requested that he be allowed "to conduct discovery and to expand the record relating to the issues raised by this Petition." (Dkt. No. 1 at 8.) "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rule 6(a) of the Rules Governing § 2254 cases allows courts to grant discovery at their discretion upon finding "good cause." *Bracy*, 520 U.S. at 910. The "'good cause' that authorizes discovery under Rule 6(a) requires a showing 'that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to [habeas] relief.'" *Rucker v. Norris*, 563 F.3d 766, 771 (8th Cir. 2009) (quoting *Bracy*, 520 U.S. at 909). Here, Crump does not explain how discovery and expanding the record will assist with his claim. Moreover, the Court's review with regard to an ineffective assistance of counsel claim is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 180; *see also Rhines v. Young*, 899 F.3d 482, 490 (8th Cir. 2018), *cert. denied*, 139 S.Ct. 1567 (2019). Therefore, the Court does not find good cause for discovery or to expand the record in this case and the request should be denied.

### V.    REQUEST FOR A HEARING

Crump seeks a hearing at which proof may be offered concerning the allegations in the Petition. (Dkt. No. 1 at 8.) Ordinarily, a federal court may grant an evidentiary hearing in a habeas matter when there are genuine factual disputes. *See Kendrick v.*

18

*Carlson*, 995 F.2d 1440, 1446 (8th Cir. 1993).  There are no such factual disputes here that would affect the outcome, and therefore the request should be denied.

## VI.    CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability ("COA").  *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Flieger v. Delo*, 16 F.3d 878, 882 83 (8th Cir. 1994) (citing *Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (per curiam)).  In this case, it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, would treat Crump's current habeas corpus petition differently than it is being treated here.  Crump has not identified, and this Court cannot discern, anything novel, noteworthy or worrisome about this case that warrants appellate review.  It is therefore recommended that Crump should not be granted a COA in this case.

## VII.    <u>RECOMMENDATION</u>

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1.    The petition for a writ of habeas corpus of Petitioner Lamar James Crump (Dkt. No. 1) be **DENIED**.

2.     Petitioner's requests for discovery, to expand the record, and for an

evidentiary hearing be **DENIED**.

3.     That no Certificate of Appealability be issued to Petitioner

4.     That this case be **DISMISSED WITH PREJUDICE**.


DATED:  June 10, 2019                    *s/Elizabeth Cowan Wright*
                                          ELIZABETH COWAN WRIGHT
                                          United States Magistrate Judge




## **NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).